# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| JACKIE J. ESTERS | * | CIVIL ACTION NO.  09-1123 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| MICHAEL J. ASTRUE,<br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background & Procedural History

Jackie J. Esters protectively filed the instant application for Title XVI Supplemental Security Income payments on March 30, 2007.  (Tr. 57, 68).  She alleged disability since March 1, 1997, because of arthritis, high blood pressure, and swelling in her lower extremities.  (Tr. 68, 73).[1]  The claim was denied at the initial stage of the administrative process.  (Tr. 30-35).  Thereafter, Esters requested and received an April 14, 2008, hearing before an Administrative Law Judge ("ALJ").  (Tr. 20-29).  However, in an August 7, 2008, written decision, the ALJ determined that Esters was not disabled under the Act, finding at Step Four of the sequential

---

[1]  A prior application was denied on February 14, 2001, at the initial stage of the administrative process, with no indication that it was further appealed.  (Tr. 69).

evaluation process that she was able to return to her past relevant work as a nurse's aide.  (Tr. 8-19).  Esters appealed the adverse decision to the Appeals Council.  On May 19, 2009, however, the Appeals Council denied Esters' request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-2).

On July 8, 2009, Esters sought review before this court.  She alleges that the ALJ erred in his residual functional capacity assessment, thus tainting his Step Four determination.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program

throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make

3

an adjustment to other work in the economy.

*See, Boyd v. Apfel*,  239 F.3d 698, 704 -705 (5ᵗʰ Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I.     Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Esters had not engaged in substantial gainful activity during the relevant period.  (Tr. 14).  At Step Two, he found that she suffers severe impairments of obesity, hypertension, and arthralgias.  *Id*.  He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process.  (Tr. 17).

Plaintiff contends that the ALJ erred when he implicitly determined that she did not have a severe impairment of ischemic heart disease.  In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5ᵗʰ Cir. 2000) (citing *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir.1985)).  However, when, as here, the ALJ's analysis proceeds beyond Step Two of the

4

sequential evaluation process, strict adherence to *Stone* and its requirements is not required.  *See*
*Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011
(5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987).  Once a severe impairment is
determined to exist, all medically determinable impairments must be considered in the remaining
steps of the sequential analysis.  *See* 20 C.F.R. § 416.945(a)(2).  Indeed, the ALJ recited the
foregoing regulation, and proceeded to consider the medical record and the aggregate impact of
plaintiff's impairments.  *See* Tr. 13-17, and discussion, *infra*.  The critical issue becomes whether
the ALJ's residual functional capacity assessment is supported by substantial evidence.

## II.    Residual Functional Capacity

The ALJ next determined that Esters retains the residual functional capacity to perform
the full range of  medium work.  (Tr. 17).[2]  Plaintiff contends that the ALJ's determination that

---

[2]  Medium work is defined and explained by Social Security Ruling 83-10.  It provides:
[t]he regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the full range of medium work usually requires frequent bending-stooping. (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist). Flexibility of the knees as well as the torso is important for this activity.  (Crouching is bending both the legs and spine in order to bend the body downward and forward).  However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve

she retains the exertional capacity for medium work is not supported by substantial evidence.

Quoting Social Security Ruling 96-8p, the Fifth Circuit has observed that,

> a residual functional capacity (RFC) is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.  The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.  However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work. . . . RFC involves both exertional and nonexertional factors. Exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  Each function must be considered separately.  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . .  The RFC assessment must include a resolution of any inconsistencies in the evidence.

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (citations and internal quotation marks omitted).[3]

In this case, no physician of record has examined plaintiff's impairments and quantified their effects upon her physical ability to perform work-related activities.  The closest that anyone came to doing so was David Hebert, M.D., in the course of his May 23, 2007, consultative examination.  (Tr. 132-136).  In his ensuing report, Hebert remarked that Esters stated that her primary complaint was arthritis all over her body.  *Id*.  However, the arthritis was worse in her

---

> equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semi-skilled jobs).  In most medium jobs, being on one's feet for most of the workday is critical.  Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling 83-10

[3]  Although Social Security Rulings are not binding on the federal courts, *Myers, supra*, they are "binding on all components of the Social Security Administration."  20 C.F.R. § 402.35 (b)(1).

knees.  *Id*.  She said that she was unable to work because of pain in her joints.  *Id*.  She also reported swelling and arterial hypertension.  *Id*.  She admitted to smoking one pack of cigarettes per day for over 40 years.  *Id*.  Although she had no history of chest pain, she did complain of hypertension and swollen ankles.  *Id*.  Upon examination, straight leg testing was negative bilaterally.  *Id*.  Her gait and station were normal, without assistive devices.  *Id*.  She had no difficulty with routine ambulation or walking on her heels and tip toes.  *Id*.  Esters exhibited a "fairly good" range of motion in her right knee.  *Id*.  Her left knee had flexion from 0 to 150 degrees.  *Id*.  All other joints exhibited a normal range of motion.  *Id*.  She exhibited no motor or sensory deficits, and motor strength was 5/5 in all extremities.  *Id*.  X-rays of the right knee showed normal anatomy and normal compartment spaces and sharp crisp borders to all joint surfaces.  *Id*.

Hebert concluded that Esters was "essentially completely within normal limits."  *Id*.  He diagnosed arterial hypertension, poorly controlled, but with no evidence of end organ damage; generalized, non-specific arthralgia, which was probably related to early osteoarthritis, but with no deformity or significant limitation of function in any of the joints; no evidence of *excessive* edema or swelling of any of the joints including the lower extremities; and history of carcinoma of the colon.  *Id*.  Hebert opined that medically, he saw no reason why Esters could not perform "routine" walking, sitting, standing, carrying, or lifting for an eight hour day.  *Id*.

The difficulty with Hebert's evaluation, however, is that he does not explain what he means by "routine."  Does this mean that the then 62 year old claimant retained the exertional capacity for light, medium, or heavy work?  Alternatively, does it mean that she has no significant limitation of functioning at all?  In his decision, the ALJ recognized that the record did not contain any state agency medical opinions.  (Tr. 18).  Instead, he noted a Physical

Residual Functional Capacity Assessment form completed by a state agency disability examiner that reflected an exertional capacity for medium work. (Tr. 137-144). The ALJ observed that, by regulation, a disability examiner must be qualified to interpret and evaluate medical reports. 20 C.F.R. § 404.1615(c)(3). However, the same regulation specifies that a disability determination can be made by a disability examiner alone (i.e. without the assistance of a state agency medical consultant) only when there is no medical evidence. 20 C.F.R. § 404.1615(c)(2). The instant record is not so situated. Moreover, a disability examiner is not a medical doctor, and her opinion is not considered an acceptable medical source statement or afforded the same weight as an opinion of a medical or psychological consultant of the state agency. *See* 20 C.F.R. §§ 416.927(f) and 416.913(a)-(d).[4]

In sum, it is apparent that the ALJ autonomously derived plaintiff's residual functional capacity. Yet, in the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination,[5] the court is constrained to find that the ALJ's assessment is not supported by substantial evidence. *See Williams v. Astrue*, 2009 WL 4716027 (5th Cir. Dec. 10, 2009) (unpubl.) ("an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions"); *Ripley v. Chater,* 67 F.3d 552, 557 -558 (5th Cir. 1995) (substantial evidence lacking where: no medical assessment of claimant's residual functional capacity, and claimant's testimony was inconsistent

---

[4]  In addition, medical records from the period after Dr. Hebert's examination suggest that plaintiff's impairments were more serious than initially thought. For instance, on November 1, 2007, she reported increased fatigue; shortness of breath, with exertion; and increased pedal edema. (Tr. 149). Also, a November 16, 2007, echocardiogram was consistent with ischemic heart disease. (Tr. 147).

[5]  Plaintiff's own testimony was not consistent with an exertional capacity for medium work. *See e.g.*, Tr. 25, 85.

with ALJ's assessment); *Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004) (unpubl.) (in the absence of medical opinion or evidence establishing that the claimant could perform the requisite exertional demands, the ALJ's determination is not supported by substantial evidence).

Furthermore, in connection with her request for review before the Appeals Council, plaintiff submitted additional medical records that pre-date the ALJ's decision, including a May 13, 2008, x-ray of the lumbar spine that revealed diffuse degenerative disc and joint changes throughout the lumbar spine.  (Tr. 120).  This evidence constitutes part of the instant record – provided that it is new, material and related to the period before the ALJ's decision.  *See, Higginbotham v. Barnhart*  405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[6]  There is little question that the evidence satisfies the foregoing criteria; thus, it serves to further erode the ALJ's residual functional capacity assessment.

## III.    Step Four and Remand

Because the foundation for the Commissioner's Step Four determination was premised upon a residual functional capacity that is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that plaintiff is not disabled during the relevant period is also not supported by substantial evidence.

Plaintiff urges the court to enter a judgment awarding benefits for the relevant period. The courts have power to enter, upon the pleadings and transcript of the record, a judgment

---

[6]  *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*,  *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)).  Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period.  *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).  When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits.  *See Ferguson v. Heckler*,  750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).  The instant record is not so disposed.  Plaintiff's residual functional capacity assessment remains indeterminate.

<u>**Conclusion**</u>

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 22nd day of July 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

11